Filed 3/10/25  Tom v. Stanford Health Care CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HARRIET TOM et al., | H051074, H051549 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 20CV367303) |
| v. | |
| STANFORD HEALTH CARE, | |
| Defendant and Respondent. | |

Darrell Tom died in 2019 while hospitalized at a facility operated by defendant Stanford Health Care (Stanford).  In their suit against Stanford and one of decedent's treating physicians (Gundeep Dhillon), plaintiffs Harriet Tom (individually and on behalf of the Estate of Darrell Tom), Andrea Tom, and Nicholas Tom alleged causes of action including wrongful death and intentional infliction of emotional distress.  Plaintiffs alleged Stanford denied decedent Darrell Tom a medically necessary intensive care unit transfer in retaliation for Andrea Tom reporting sexual harassment by Dhillon.

Stanford moved for summary adjudication.  As part of the evidence filed in opposition, plaintiffs submitted two doctors' declarations which attached the doctors' respective unsworn expert reports opining on the adequacy of decedent's care.  Without requesting leave of court, on the night before the continued summary adjudication hearing plaintiffs filed new declarations from those doctors which moved their expert opinions into the body of the sworn declarations.  The trial court granted summary

adjudication on all but one cause of action (which plaintiffs elected to dismiss in order to take this appeal). The trial court also awarded most of the costs claimed by Stanford.

Plaintiffs argue in their appeal from the judgment that the trial court improperly excluded the testimony of one of their medical experts. Plaintiffs also contend that their evidence created triable issues of material fact about various causes of action. As we will explain, we find the court abused its discretion in excluding one medical expert report. We will reverse the judgment because the evidence in that report creates a triable issue of fact as to plaintiffs' professional negligence, wrongful death, and unfair competition causes of action. Reversing the judgment also necessitates reversing the order awarding costs.

## I. TRIAL COURT PROCEEDINGS

According to the operative third amended complaint, decedent was diagnosed in 1993 with polycythemia vera, a type of blood cancer. His condition worsened in 2017, and in November 2018 he was admitted to Stanford for a stem cell transplant when he was 63 years old. Decedent granted his wife Harriet a power of attorney, with his daughter Andrea selected as a surrogate decisionmaker. (To prevent confusion and meaning no disrespect, we will refer to members of the Tom family by their first names.)

Decedent was admitted to the medical intensive care unit twice between November 2018 and February 2019 due to deteriorating health. Dhillon was one of decedent's treating physicians during the second intensive care unit admission. The operative complaint alleges that Dhillon sexually harassed Andrea while they were discussing decedent's care. The incident was reported to a chaplain employed by Stanford, who filed an internal complaint. Andrea was later informed by the hospital's vice chief of staff that Stanford had completed its investigation and found no wrongdoing. However, Andrea was assured that Dhillon would have no further contact with her or her family. She was also informed of her right to file a complaint with the California Medical Board.

2

The operative complaint alleges decedent was discharged from the intensive care unit in February 2019 because his condition had improved. He remained hospitalized and was "placed back on the bone marrow transplant service." Decedent's health deteriorated again in early March 2019. The operative complaint alleges another treating physician, Joshua Mansour, called Andrea and told her that a bed was available in the intensive care unit but that Dhillon was the attending physician. Decedent was never readmitted to the intensive care unit despite pleas from his family to have him readmitted. Decedent's heart stopped on March 19, 2019, and Stanford did not try to resuscitate him. The operative complaint alleges Stanford's failure to attempt resuscitation was contrary to the Tom family's request that decedent receive " 'full code' care including resuscitation." The operative complaint alleged Stanford and Dhillon retaliated for the sexual harassment report by deliberately preventing decedent's readmission to the intensive care unit. It further alleged decedent would have survived had he been readmitted to the intensive care unit.

The operative complaint alleges 14 causes of action against Stanford and Dhillon. A demurrer to certain causes of action was sustained without leave to amend. Plaintiffs dismissed Dhillon with prejudice in 2022. The following causes of action remained pending against Stanford following the sustained demurrer: willful misconduct (third cause of action); professional negligence (fourth cause of action); negligent supervision (sixth cause of action); fraudulent concealment (seventh cause of action); wrongful death (11th cause of action); intentional infliction of emotional distress (12th cause of action); and unfair competition (14th cause of action).

A. **SUMMARY ADJUDICATION MOTIONS AND SUPPORTING EVIDENCE**

Stanford moved for summary adjudication of the remaining causes of action in three motions, all set for the same hearing date. Stanford offered evidence to support its argument that decedent's death was not caused by willful or negligent conduct. Stanford's evidence included expert declarations from two doctors, Robert Stephens and

3

Yi-Bin Chen. Both doctors declared that they had experience treating bone marrow transplant patients with medical histories similar to that of decedent. The doctors noted that decedent had significant pre-existing comorbidities when he was admitted for the bone marrow transplant. Based on their review of the medical records and other filings in the case, both doctors opined that Stanford's care and treatment of decedent met the standard of care. Both doctors also opined that, to a reasonable degree of medical probability, Stanford and its health care providers were not a cause of or substantial factor in decedent's death.

### B. PLAINTIFFS' OPPOSITION AND EVIDENCE

Certain evidence in plaintiff's opposition to summary adjudication is relevant to the issues on appeal. Plaintiffs filed expert declarations by two doctors, Peter Murphy and Sweta Chekuri. Each one-page declaration is made under penalty of perjury. Each states the expert "prepared a report regarding Darrell Tom's care from Stanford Health Care that contains my professional opinion based on my experience" as a doctor. Each indicates that a "true and correct copy of the report as of today is attached hereto as Exhibit A." But neither of the referenced reports is made under penalty of perjury. Murphy opined in his unsworn report that by not transferring decedent to the intensive care unit, Stanford did not meet the professional standard of care. Murphy further opined that decedent likely would have survived past March 19, 2019 had he been transferred to intensive care.

Plaintiffs also relied on Andrea's deposition testimony. Andrea testified about an interaction with Dr. Dhillon during the week before Valentine's Day in 2019. Dhillon conducted a clinical assessment of decedent in the intensive care unit while Andrea was in the room. Dhillon wanted to give decedent a sedative, which Andrea opposed because she wanted decedent to be alert and awake. Dhillon "proceeded to tell [Andrea] that [she] was assertive, that he liked it, and that [they] should grab a drink sometime." Andrea told him she had a boyfriend; Dhillon responded that her boyfriend probably was

4

not a doctor. When Andrea informed Dhillon that her boyfriend was a doctor, "he said that all doctors cheat, but he would never cheat."

Andrea also testified about a phone call she had with another Stanford doctor, Joshua Mansour. Andrea testified that she believed decedent was denied readmission to the intensive care unit before his death. She stated her belief was based on a phone call from Mansour, who reportedly said that her "father's condition had deteriorated overnight, and that he was requiring more support and would be going to the ICU and would likely need not [*sic*] to be intubated; however, [Mansour] was aware of the issues we had with the ICU and Dr. Dhillon, and that we would be going to the CVU instead of the medical ICU as he was under the impression that Dr. Dhillon may have been at the medical ICU." Later in the deposition, Andrea summarized the phone call as follows: Mansour was "the one who called myself and my mother, and he called me to let me know that my dad would be going to the ICU because his medical condition had deteriorated overnight, and that he was likely going to be required -- needing intubation, but he was going to need closer monitoring that they could not provide on the bone marrow transplant unit and told me that my father would be going to CVU instead of the medical ICU upstairs because of the incidences that had occurred with Dr. Dhillon and the ICU issues that we had previously had." ("CVU" apparently refers to the cardiovascular intensive care unit..)

Andrea's boyfriend, Dr. Nathan Singh, testified during his deposition that he was on a phone call with Andrea and Mansour in which Mansour stated the "ICU teams were resistant to accepting [decedent] back on the ICU because they perceived this patient's case and care to be higher risk, given the incident with Dr. Dhillon and all the other medical issues."

Mansour confirmed in his deposition that he completed a fellowship in bone marrow transplant and cellular therapy at Stanford in 2018 and 2019. He remembered that decedent had a bone marrow transplant, and testified that there were several meetings

5

between the bone marrow transplant team and the intensive care unit team about decedent. He did not recall hearing about problems decedent and his family had with any intensive care unit doctors or staff. He answered affirmatively when asked, "And you personally did not call Andrea or Harriet to [let] them know that Darrell had gotten worse; is that correct?" He did not recall whether he told Andrea or Harriet that decedent was going to the intensive care unit. He explained that "as a fellow or physician, I call for a higher level of care. The decision of where a patient goes does not fall on our team."

## C. OBJECTIONS, LATE EVIDENCE, AND SUMMARY ADJUDICATION HEARINGS

Stanford objected to plaintiffs' doctors' expert reports, arguing among other things that they were inadmissible unsworn statements. Stanford also objected to portions of Andrea's and Singh's depositions relating statements by Mansour, arguing among other things that the statements were hearsay, lacked foundation, and were speculative.

The motions were set to be heard on March 21, 2023. The night before the hearing, plaintiffs filed a declaration by a legal assistant informing the court they had discovered that a technical issue prevented some of the evidence supporting their opposition from being filed. At the hearing, Stanford confirmed receiving a complete service copy of the opposition evidence. The court continued the hearings to April 4 and allowed plaintiffs to file any "material that we should have received and we didn't." The trial court agreed with the clarification by counsel for Stanford that the "evidence that is being submitted is the evidence that was served on March 7" and not "new evidence or changes to deficiencies of the evidence." Plaintiffs did not disagree, did not request leave to submit new evidence, and did not request leave to correct any defects in the original opposition evidence.

Without obtaining leave of court, plaintiffs submitted new materials in their updated evidentiary filings, including an "addendum" on March 29, apparently containing excerpts from a March 24 deposition of Murphy. The deposition excerpts

6

were not signed by the certified shorthand reporter. Plaintiffs also filed new declarations by Murphy and Chekuri which moved the contents of the unsworn expert reports attached to the original declarations into the body of the new sworn declarations. File-stamps indicate they were filed after 9:00 p.m. on the night before the continued hearing on the summary adjudication motions. Other than those file-stamps, neither new declaration is dated.

At the continued hearing, plaintiffs relied on information from the Murphy deposition taken after the initial summary adjudication hearing. Counsel stated the material was provided "as quickly as we could," but offered no explanation for why the deposition did not occur until after the first scheduled summary adjudication hearing. Counsel for Stanford pointed out that the oral request for a continuance to consider new evidence was untimely. (Citing Code Civ. Proc., § 437c, subd. (h).) The court granted summary adjudication as to all but the seventh cause of action (fraudulent concealment). Counsel for plaintiffs indicated they were "willing to stipulate right now to drop the 7th Cause of Action" in order to allow for an immediate appeal.

### D. ORDER GRANTING SUMMARY ADJUDICATION

At the trial court's request, Stanford converted the court's tentative order into an order granting summary adjudication and added a new conclusion reflecting what occurred at the summary adjudication hearing. The trial court sustained Stanford's evidentiary objections to the expert reports attached to the original Murphy and Chekuri declarations, excluding them as unsworn and speculative. The court also sustained Stanford's evidentiary objections to the hearsay statements attributed to Mansour by Andrea and Singh in their depositions.

The trial court found Stanford met its initial burden on the third cause of action (willful misconduct) to show that it acted appropriately in deciding whether to readmit decedent to the intensive care unit. That finding was based on the Stephens and Chen expert declarations. The court found no triable issue of material fact as to that cause of

7

action because the Murphy and Chekuri expert reports were inadmissible.  The court also found nothing in the Mansour, Andrea, or Singh depositions created a triable issue of fact because the evidence was "either irrelevant, speculative, or subject to objections."  Based on similar reasoning, the trial court found no triable issue of material fact as to the fourth (professional negligence), 11th (wrongful death), and 12th (intentional infliction of emotional distress) causes of action.

As to the sixth cause of action (negligent supervision and retention), plaintiffs' theory was that Stanford failed to adequately supervise Dhillon's involvement in the intensive care unit based on its refusal to accept decedent due to issues with Dhillon.  The trial court found plaintiffs failed to raise a triable issue of fact because they did not "direct the court to any material facts or evidence in the separate statement to support this contention."  The court granted summary adjudication as to the 14th cause of action (unfair competition), reasoning it was based solely on claims for which the court had already granted summary adjudication.

Regarding punitive damages, the trial court found Stanford offered evidence that it had no advance knowledge of an unfit employee; did not employ an unfit employee with conscious disregard for the safety of others; and was not directly guilty through an officer, director, or managing agent of oppression, fraud, or malice.  The trial court found plaintiffs failed to address Stanford's liability for punitive damages as an employer and did not raise a triable issue given the court's reasoning that foreclosed the willful misconduct cause of action.

The trial court's order confirmed plaintiffs' stipulated dismissal of the seventh cause of action (fraudulent concealment).  With no cause of action remaining, judgment was entered and plaintiffs timely appealed from the judgment (case No. H051074).

### E. PLAINTIFFS' MOTION TO TAX COSTS

Though not included in the record on appeal, it is undisputed that Stanford filed a memorandum of costs seeking over $100,000, which plaintiffs moved to tax.  The trial

court taxed $1,000 in costs for the filing fees for two of the summary adjudication motions, and otherwise denied plaintiffs' motion. Plaintiffs timely appealed from that order (case No. H051549). The two appeals were briefed separately. On our own motion, we ordered the appeals considered together for purposes of oral argument and disposition.

## II. DISCUSSION

### A. EVIDENTIARY ISSUES RELATED TO THE MURPHY EXPERT DECLARATION

#### 1. The Initial Unsworn Reports Were Inadmissible

An opposition to a motion for summary judgment or adjudication "shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c, subd. (b)(2); undesignated statutory references are to this Code.) Other than judicially noticed matter, all of the foregoing evidence must be given under penalty of perjury. (§§ 2003 [affidavit]; 2015.5 [declaration]; 2033.210, subd. (a) [admission]; 2030.250 [answer to interrogatory]; 2004 [deposition]; see also § 2094 [describing oath requirement].) The "purpose of the statutory references to affidavits and declarations is to enhance reliability." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 941 (*Sweetwater*).) "A party may not raise a triable issue of fact at summary judgment by relying on evidence that will not be admissible at trial." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543, italics omitted.) We review a trial court's evidentiary rulings on summary judgment for abuse of discretion. (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 951 (*Jones*).)

It is undisputed that the expert reports attached to the Murphy and Chekuri declarations originally filed with plaintiffs' opposition to summary adjudication are unsworn. Neither is signed under penalty of perjury; Murphy's is not signed at all. The paragraphs in the declarations referring to the reports merely authenticate them as containing each doctor's professional opinion; they do not state that the expert reports are

9

offered under penalty of perjury. As the expert reports were not made under penalty of perjury, they do not qualify as evidence described in section 437c, subdivision (b)(2). And because the unsworn reports would not be admissible at trial, we find no error in excluding them.[1]

Our conclusion is consistent with federal authorities. Federal courts "have routinely held that unsworn expert reports are inadmissible" as evidence in opposition to a summary judgment motion. (*Harris v. Extendicare Homes, Inc.* (W.D.Wash. 2011) 829 F.Supp.2d 1023, 1027; accord, *Fowle v. C & C Cola* (3d Cir. 1989) 868 F.2d 59, 67; *Provident Life and Accident Insurance Co. v. Goel* (5th Cir. 2001) 274 F.3d 984, 1000.) We find these federal authorities persuasive.

On appeal, plaintiffs focus exclusively on Murphy's declaration and expert report, raising no challenge to exclusion of the Chekuri declaration and report. Plaintiffs argue Murphy's declaration "incorporated his expert report by reference." As we have discussed, Murphy's declaration authenticated the attachment as a "true and correct copy of the report" containing his "professional opinion." But authentication merely establishes that evidence "is the writing that the proponent of the evidence claims it is." (Evid. Code, § 1400.) Authentication does not mean the declarant is attesting to the truth of a document's content under penalty of perjury. Of course, language in a declaration might authenticate a report; incorporate the report by reference; *and* state that the report's contents are true under penalty of perjury. But that is not what the Murphy declaration accomplished here.

Plaintiffs quote *United States v. Vesikuru* (9th Cir. 2002) 314 F.3d 1116, 1121 for the proposition that "there are no required magic words of incorporation." But that case was about whether a search warrant properly incorporated a *sworn* affidavit. (*Id.* at

---

[1] Plaintiffs argue evidentiary rulings should be reviewed de novo. But because the unsworn reports are inadmissible as a matter of law, we would find no error even if we were to review the evidentiary decision de novo.

p. 1120 ["The warrant explicitly stated: '*Upon the sworn complaint made before me* there is probable cause ... ' "].) Here, by contrast, the Murphy report was neither sworn nor signed. *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608–610—addressing whether a complaint incorporated by reference certain attachments to defeat a motion for judgment on the pleadings—is also distinguishable because the procedural posture there did not require the attachments to be sworn. Even if Murphy's declaration had incorporated his expert report (which we conclude it did not), incorporation alone would be inadequate to convert an unsworn expert report into a sworn expert report.

Citing *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594 (*Harris*) and *Sweetwater*, *supra*, 6 Cal.5th 931, plaintiffs argue that as "long as the evidence is eventually admissible 'at trial,' it qualifies as admissible evidence for purposes of summary judgment." But again, the evidence at issue in those cases was contained within sworn statements. (*Harris*, at pp. 601–602 [opinion evidence in an expert declaration]; *Sweetwater*, at pp. 942–943 [evidence in change of plea forms that were signed under penalty of perjury and grand jury testimony].) Those courts therefore had no occasion to address the issue presented here.

*Harris* involved late disclosure of an opinion in an expert declaration that conflicted with the expert's earlier deposition testimony. (*Harris*, *supra*, 68 Cal.App.5th at pp. 601–602.) The *Harris* court concluded no statute rendered the disputed testimony inadmissible at trial, and trial courts have "discretion to admit an opinion the expert did not disclose in his or her deposition." (*Id.* at p. 602.)

*Sweetwater* concerned "what kind of evidence a court may consider in ruling on a pretrial anti-SLAPP motion in determining a plaintiff's probability of success." (*Sweetwater*, *supra*, 6 Cal.5th at p. 937.) The court discussed both the form of that evidence and "whether that evidence will be admissible at an eventual trial." (*Ibid*.) The disputed evidence was contained in excerpts of grand jury testimony as well as in change

11

of plea forms with factual narratives that were signed under penalty of perjury.  (*Id.* at pp. 938–939.)  The court found the grand jury testimony could be considered the "equivalent of a testifying witness's declaration under penalty of perjury."  (*Id.* at p. 943.)  The court found the change of plea forms and incorporated factual narratives could be considered declarations (citing § 2015.5) because they were signed under penalty of perjury.  (*Sweetwater*, at p. 942.)  The *Sweetwater* court distinguished "between evidence that *may* be admissible at trial and evidence that could *never* be admitted."  (*Id.* at p. 948.)  Although the disputed evidence contained hearsay, the court concluded it could be considered because there was "no categorical bar to statements" in the disputed evidence, and the hearsay exception for statements against interest arguably applied.  (*Id.* at p. 949.)  In contrast here, an unsworn expert report would never be admissible at trial.

Plaintiffs urge that a case relied on by Stanford should be read to support plaintiffs' position.  (Citing *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014 (*Stockinger*), disapproved on another ground by *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 624, fn. 16.)  Stockinger was injured while riding in the open bed of a college classmate's pickup truck as they worked on a school assignment.  (*Stockinger*, at p. 1017.)  She sued her community college and an instructor for negligence.  (*Id.* at p. 1018.)  In opposing the defendants' summary judgment motion, Stockinger submitted transcripts of tape-recorded telephone conversations between Stockinger's investigator and three individuals (including the instructor).  (*Id.* at p. 1022.)  The trial court excluded those transcripts and granted summary judgment.  (*Id.* at p. 1023.)  The appellate court found no abuse of discretion, reasoning that "the transcripts could not qualify as declarations sufficient to defeat summary judgment, because they contained no statement that the information contained therein was based upon personal knowledge."  (*Id.* at pp. 1025–1026.)  The court further reasoned, "that the transcripts showed statements by the interviewees, responding

12

affirmatively to the question whether their statements were true under penalty of perjury, did not convert the statements into admissible affidavits or declarations." (*Id.* at p. 1026; see also *ibid.* ["there was no compliance with Code of Civil Procedure section 2015.5, and the transcripts themselves were inadmissible on that ground"].) The court concluded that even if the transcript statements by the instructor were properly authenticated, any error in excluding them was harmless because the court also found he owed no duty to Stockinger. (*Id.* at p. 1028.)

Plaintiffs argue that "neither the declarant's own statements on the tape nor the tapes themselves were found to be improperly incorporated by reference into [Stockinger's investigator's] declaration." But *Stockinger* concerned whether "the trial court erred in excluding transcripts of telephone conversations," not whether the trial court erred in excluding the accompanying declarations by Stockinger's investigator. (*Stockinger*, *supra*, 111 Cal.App.4th at p. 1025.) Consistent with our analysis, the *Stockinger* court concluded that the transcripts were inadmissible because they did not meet the substantive requirements to be considered admissible evidence. (*Id.* at pp. 1025–1026, citing § 2015.5.)

### 2. Excluding the Second Murphy Declaration Was an Abuse of Discretion

The trial court adopted its tentative ruling as the decision in this case, implicitly refusing to consider any of plaintiffs' evidence other than that which was filed with plaintiffs' opposition. We review for abuse of discretion both a trial court's refusal to consider late filings and the denial of an untimely request for a continuance. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765; *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1428.)

The night before the continued summary judgment hearing, plaintiffs filed the second Murphy declaration, which added the contents of his original unsworn expert report to the body of the sworn declaration. Although filed late and without leave of court, the second Murphy declaration adequately resolved the procedural defect identified

13

in the trial court's tentative ruling. The second Murphy declaration contained no new or different evidence, and thus presented no unfair surprise to Stanford. The trial court's refusal to consider plaintiffs' main expert evidence based on a procedural defect that had been resolved before the final summary adjudication hearing comes close to being a terminating sanction, which is disfavored absent a showing of willful misconduct or a history of abusing pretrial procedures. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1364, fn. 16 ["Terminating sanctions such as an order granting summary judgment based upon procedural error ' "have been held to be an abuse of discretion unless the party's violation of the procedural rule was willful [citations] or, if not willful, at least preceded by a history of abuse of pretrial procedures, or a showing [that] less severe sanctions would not produce compliance with the procedural rule." ' "], superseded by statute on another ground as stated in *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 840.) We conclude the trial court abused its discretion in not considering the second Murphy declaration.

We are mindful of the trial court's understandable frustration with plaintiffs' counsel. Plaintiffs' counsel never acknowledged the procedural defect in the original Murphy declaration, nor did counsel seek leave of court before filing the second Murphy declaration on the eve of the continued summary adjudication hearing. We also note the second Murphy declaration is undated. (See § 2015.5 [requiring that a declaration state the date of execution].) We by no means condone disregard for applicable statutes, court rules, and court directives. We also acknowledge that trial courts have broad discretion to impose appropriate corrective action to ensure compliance with the law and the court's own directives. But on this record, we conclude the trial court abused its discretion by excluding the second Murphy declaration in its entirety.

### 3. Speculation Objection to the Second Murphy Declaration

The trial court also sustained Stanford's objection to Murphy's expert report as being speculative. An "expert opinion may not be based on assumptions of fact that are

14

without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510.) We review the trial court's evidentiary ruling for abuse of discretion. (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226.)

Murphy declared that he was a medical doctor with 20 years' experience as the director of a hospital intensive care unit. He reviewed, among other things, decedent's autopsy report and portions of decedent's medical records. He described his opinions as "expressed to a reasonable degree of medical certainty." Murphy offered four main opinions: "Mr. Tom should have been transferred to an ICU prior to March 19, 2019, shortly after being evaluated by rapid response team on March 16, 2019"; "Mr. Tom would have likely survived past March 19, 2019 had he been transferred to an ICU on March 16 or 17, 2019"; "Mr. Tom developed asystole, and died, because he was inadequately monitored," such that "[f]ailing to transfer Mr. Tom to the ICU fell beneath the professional standard of care"; and "The fact that Mr. Tom was not transferred to the ICU, and that he was managed on the floor despite obvious evidence of fragility and his remaining in a critical condition, is a decision that was likely the result of the conflict between the family/patient and care team as regards goals of care."

The trial court abused its discretion in finding the *entire* Murphy declaration impermissibly speculative. As a doctor with extensive experience in intensive care units who reviewed records related to the care decedent received, Murphy was qualified to provide his medical opinion about whether decedent should have been transferred to the intensive care unit; the likelihood of decedent's survival had he been transferred to the intensive care unit; and whether Stanford's medical staff failed to meet the professional standard of care. We will therefore consider those opinions in determining whether plaintiffs raised a triable issue of fact about any cause of action.

15

We see no abuse of discretion in the trial court's decision to exclude Murphy's final opinion—regarding the reason Stanford did not transfer decedent to the intensive care unit—as speculative. Although Murphy's expertise allowed him to testify about whether the treatment decedent received met the standard of care, his further opinion that Stanford declined to transfer decedent due to "conflict" or other non-medical reason was pure speculation.

## B. SUMMARY ADJUDICATION WAS IMPROPER AS TO CERTAIN CAUSES OF ACTION

Summary adjudication is appropriate when there is no triable issue of material fact as to one or more elements of a particular cause of action. (§ 437c, subds. (f)(1), (o)(1).) We review an order granting summary judgment or summary adjudication de novo, applying a three-step analysis. (*Jones*, *supra*, 230 Cal.App.4th at p. 945; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.) First, we identify the causes of action framed by the pleadings. Second, we review whether the defendant as the moving party has carried its burden to show that one or more elements cannot be established or an affirmative defense precludes the cause of action. (§ 437c, subd. (o); *Murphy v. Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 41 [moving party must show causes of action "are entirely without merit on any legal theory"].) Third, if the defendant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden of production shifts to the plaintiff and we review whether the plaintiff has produced evidence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Jones*, at p. 945.) A triable issue of material fact exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.) "[A] party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Jones,* at pp. 945–946.) "We liberally construe the evidence and resolve

16

any doubts in favor of the party opposing the motion." (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 497 (*Sharufa*).)

### 1. Triable Issue of Fact As To Professional Negligence

The elements of a cause of action for professional negligence via medical malpractice are: " '(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.) " 'The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.' " (*Id.* at p. 970.)

Stanford supported its motion for summary adjudication with expert declarations from two medical doctors who both opined that, to a reasonable degree of medical probability, Stanford and its health care providers met the standard of care and were not a cause of or substantial factor in decedent's death.

In opposition, plaintiffs' offered Murphy's opinion that due to decedent's acute symptoms and "increasingly fragile state," he should have been transferred to the intensive care unit on March 16 or 17, 2019, and that decedent "developed asystole, and died, because he was inadequately monitored." Murphy explained his opinion that had decedent been adequately monitored in the intensive care unit, "he would not likely have gone into asystole ... because acute events like aspiration and/or electrical cardiac decompensation would have been identified and addressed appropriately." He continued, "ICU care would most likely have prevented the arrythmia that [decedent] developed leading to asystole." He also stated that even if "arrythmia had developed, ICU care should have resolved it prior to its leading to asystole." Based on the foregoing, Murphy opined both that Stanford's failure to transfer decedent to the intensive care unit fell

17

below the professional standard of care, and that decedent would have likely survived past March 19, 2019 had he been transferred to the intensive care unit.

We acknowledge that decedent's fragile medical state and comorbidities may ultimately lead a trier of fact to conclude that Stanford's care was not negligent. But we must liberally construe the non-moving party's evidence in opposition to summary adjudication. (*Sharufa*, *supra*, 49 Cal.App.5th at p. 497.) Applying that standard, we conclude that Murphy's expert opinions adequately raise triable issues of fact about whether Stanford breached its duty of care and whether that breach caused or was a substantial factor in decedent's death.

### 2. Triable Issue of Fact As To Wrongful Death

The elements of a cause of action for wrongful death are the underlying tort (here, professional negligence), the resulting death, and damages. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263.) Murphy opined that Stanford breached the applicable standard of care by not transferring decedent to the intensive care unit and that decedent would likely have survived had he been transferred. Like the professional negligence cause of action, the Murphy declaration provides sufficient evidence to create a triable issue of fact about the wrongful death cause of action.

### 3. Triable Issue of Fact As To Unfair Competition Based on Negligence

Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act."[2] Plaintiffs' unfair competition cause of action alleged Stanford violated that statute by committing various torts, including professional negligence. Because we find plaintiffs produced evidence creating a triable issue of fact for their

---

[2] Plaintiffs risked forfeiting argument about the unfair competition cause of action by offering no substantive argument about it their opening brief on appeal. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.) We address it, however, because Stanford addressed the cause of action in its respondent's brief.

18

professional negligence cause of action, the derivative unfair competition cause of action based on professional negligence likewise survives summary adjudication.

## C. SUMMARY ADJUDICATION WAS PROPER AS TO CERTAIN CAUSES OF ACTION

### 1. Forfeiture of Negligent Supervision Cause of Action

Plaintiffs raise no argument on appeal about the trial court's decision on their negligent supervision cause of action. Plaintiffs have forfeited a challenge about that cause of action. (*Doe v. California Dept. of Justice*, *supra*, 173 Cal.App.4th at p. 1115.) The negligent supervision cause of action cannot be revived on remand.

### 2. No Triable Issue About Willful Misconduct

To establish willful misconduct, a plaintiff must prove not only the elements of a negligence cause of action (duty, breach, causation, and injury), but also: actual or constructive knowledge of the peril to be apprehended; actual or constructive knowledge that injury is a probable result of the danger; and conscious failure to act to avoid the peril. (*Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118, 1140.) Willful misconduct is not merely the absence of care, but rather " 'involves a more positive intent actually to harm another or to do an act with a positive, active, and absolute disregard of its consequences.' " (*Cope v. Davison* (1947) 30 Cal.2d 193, 201.)

Although the admissible portions of the Murphy declaration raise triable issues of fact about negligence, plaintiffs failed to produce admissible evidence that any tortious conduct rose to the level of willful misconduct. The trial court therefore properly granted summary adjudication to Stanford on the willful misconduct cause of action.

Plaintiffs argue "Andrea Tom and Dr. Singh's testimony raises the factual issue that one could find dislike of the family caused Stanford to refuse to admit Mr. Tom to the ICU causing his death." That testimony was based on hearsay statements attributed to Mansour. Andrea testified Mansour told her in a phone call that decedent "would be going to the ICU because his medical condition had deteriorated overnight, and that he was likely going to be required -- needing intubation, but he was going to need closer

19

monitoring that they could not provide on the bone marrow transplant unit and told me that my father would be going to CVU instead of the medical ICU upstairs because of the incidences that had occurred with Dr. Dhillon and the ICU issues that we had previously had." Even assuming her testimony would be admissible as relating a statement by a party opponent (Evid. Code, § 1220), Mansour's hearsay statements do not create a triable issue of fact about whether Stanford consciously failed to act. According to Andrea, Mansour indicated decedent would be placed in the cardiovascular intensive care unit instead of the intensive care unit. Nothing in the statements attributed to Mansour indicate Stanford "abandon[ed]" decedent, much less that "abandonment was an intentional choice." The trial court was correct to grant summary adjudication on the willful misconduct cause of action.

### 3. No Triable Issue As To Intentional Infliction of Emotional Distress

The elements of a cause of action for intentional infliction of emotional distress are extreme and outrageous conduct by the defendant with the intent to cause (or reckless disregard for the probability of causing) emotional distress; severe or extreme emotional distress suffered by the plaintiff; and a causal link between the defendant's outrageous conduct and the plaintiff's emotional distress. (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.) Plaintiffs alleged in the operative complaint that Stanford engaged in extreme and outrageous conduct by denying decedent medically necessary care. On appeal, plaintiffs identify Stanford's outrageous conduct as "allowing a sick, helpless patient to die in retaliation against his family's report of sexual harassment."

Stanford's experts opined that Stanford met the standard of care and that Stanford was not a cause of or substantial factor in decedent's death. In response, Murphy opined that Stanford breached the standard of care and was a substantial factor in decedent's death (i.e., that Stanford was professionally negligent). Murphy did not opine that any conduct by Stanford was extreme or outrageous. And similar to our analysis of the willful misconduct cause of action, no other admissible evidence creates a triable issue of

20

fact about whether Stanford's conduct was extreme or outrageous. The trial court properly granted summary adjudication on the intentional infliction of emotional distress cause of action.

### 4. No Triable Issue As To Punitive Damages

There is "no separate or independent cause of action for punitive damages" in California. (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 2.) "Instead, a claim for punitive damages is merely an additional remedy that is dependent on a viable cause of action for an underlying tort." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 429, fn. 3.) Plaintiffs' operative complaint did not seek punitive damages for professional negligence, wrongful death, or unfair competition. As no cause of action for which plaintiffs sought punitive damages remains viable, there is no triable issue of fact about whether punitive damages can be recovered.

### D. THE DISMISSED FRAUDULENT CONCEALMENT CAUSE OF ACTION CANNOT BE REVIVED

Under the one final judgment rule, "an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.) A party may stipulate to an adverse judgment to facilitate an appeal without forfeiting argument about the causes of action that were resolved on the merits. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 (*Norgart*) [" 'Although a consent ... judgment is not normally appealable, an exception is recognized when "consent was merely given to facilitate an appeal following adverse determination of a critical issue." ' "].) Alternatively, a plaintiff may voluntarily dismiss any unadjudicated causes of action with prejudice to create a final judgment allowing appellate review of the adjudicated causes of action. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1430.) But if an unadjudicated cause of action is dismissed *without* prejudice, "the judgment is one that

21

'fails to complete the disposition of all the causes of action between the parties' " and is not appealable. (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1105.)

The trial court's tentative order indicated it would deny summary adjudication of plaintiffs' fraudulent concealment cause of action. At the end of the continued summary adjudication hearing, counsel for plaintiffs asked the trial court if "it's at all possible we request a stay" pending appellate writ review. The trial court responded, "No, go ahead and file your petition." Counsel for plaintiffs later stated, "We're willing to stipulate right now to drop the 7th Cause of Action that [counsel for Stanford] is going to argue should be dropped." The judgment states the "parties stipulated to the dismissal of the seventh cause of action" for fraudulent concealment. (Some capitalization omitted.)

Plaintiffs agree that they dismissed the fraudulent concealment cause of action with prejudice. That dismissal created a final, appealable judgment. Because plaintiffs elected to dismiss the fraudulent concealment cause of action with prejudice instead of stipulating to an adverse judgment on the merits, the cause of action cannot be revived. In each of the cases plaintiffs cite about reviving claims, the parties stipulated to an adverse judgment on the merits rather than dismissing a cause of action. (E.g., *Norgart*, *supra*, 21 Cal.4th at p. 394 [stipulated grant of summary judgment to facilitate review of the statute of limitations issue].)

### E. MOTION TO TAX COSTS

Because we are reversing the judgment, the related order awarding costs must also be reversed. The trial court retains discretion on remand to decide any issues related to costs once all causes of action are resolved.

### III.   DISPOSITION

In case No. H051074, the judgment is reversed. The matter is remanded for further proceedings on plaintiffs' professional negligence, wrongful death, and unfair competition causes of action. The scope of the unfair competition cause of action on remand is limited to professional negligence and cannot be based on other torts for which

22

we have determined summary adjudication was properly granted.  In case No. H051549, the order on plaintiffs' motion to tax costs is reversed because the judgment on which it was based has been reversed.  In the interest of justice, each party shall bear its own costs in both appeals.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.


_____

Lie, J.


H051074, H051549
*Tom et al. v. Stanford Health Care*